# IN THE DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

BRENDA EVERS ANDREW,         )
                                            )
                  Petitioner,  )
                                            )
   vs.                                   )   Case No. 08-CIV-00832-R
                                          )
MILLICENT NEWTON-EMBRY,  Warden,     )
                                          )
                  Respondent. )
_____

## REPLY TO RESPONDENT'S RESPONSE TO PETITION FOR
## WRIT OF HABEAS CORPUS
_____

February 16, 2010
_____

**JOHN M. STUART, OBA#8709**
STUART, FRIEDA & HAMMOND, P.C.
1111 W. Willow, Suite 100
Duncan, Oklahoma 73533
Telephone: 580-252-9033
Facsimile: 580-252-6251
sfhpc@sfhpc.net
jmssfhpc@sfhpc.net

**MARK HENRICKSEN, OBA # 4102**
HENRICKSEN & HENRICKSEN
LAWYERS, INC.
600 North Walker, Suite 220
Oklahoma City, Oklahoma 73102-3035
Telephone:  (405) 609-1970
Facsimile:  (405) 609-1973
mark.henricksen@coxinet.net

## TABLE OF CONTENTS

**REPLY TO GROUND I**.................................................................    **1**

>THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
>REFUSING TO PERMIT THE DEFENSE TO PRESENT THE
>TESTIMONY OF WITNESSES WHOSE TESTIMONY WAS
>CRITICAL TO THE DEFENSE. THE COURT'S ACTIONS
>VIOLATED PETITIONER'S RIGHTS UNDER THE SIXTH,
>EIGHTH, AND FOURTEENTH AMENDMENTS OF THE
>UNITED STATES CONSTITUTION.

**REPLY TO GROUND II**................................................................    **10**

>THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
>PERMITTING A TORRENT OF HEARSAY STATEMENTS
>FROM THE DECEASED THAT PERVADED THE
>PROCEEDINGS AND VIOLATED PETITIONER'S RIGHT
>TO CONFRONT THE WITNESSES AGAINST HER UNDER
>THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
>OF THE UNITED STATES CONSTITUTION.

**REPLY TO GROUND III**..............................................................    **13**

>THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
>ALLOWING THE STATE TO INTRODUCE EVIDENCE OF
>OTHER CRIMES AND BAD ACTS WHICH HAD NOTHING TO
>DO WITH THE OFFENSE CHARGED, VIOLATING PETITIONER'S
>RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH
>AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**REPLY TO GROUND V**..............................................................    **15**

>INADMISSIBLE HEARSAY WAS IMPROPERLY ADMITTED
>AGAINST PETITIONER AS "COCONSPIRATOR HEARSAY,"
>DEPRIVING PETITIONER OF HER RIGHTS OF
>CONFRONTATION AND CROSS EXAMINATION, IN
>VIOLATION OF THE 6th AND 14th AMENDMENTS TO THE
>UNITED STATES CONSTITUTION, AS WELL AS ARTICLE II,
>SECTION 20 OF THE OKLAHOMA CONSTITUTION.

**REPLY TO GROUND VI**...........................................................................    **20**

    **PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
TRIAL COUNSEL, AND APPELLATE COUNSEL, IN
VIOLATION OF THE SIXTH, EIGHTH, AND
FOURTEENTH AMENDMENTS OF THE UNITED
STATES CONSTITUTION.**


**REPLY TO GROUND VII**.......................................................................    **26**

    **ADMISSION OF IRRELEVANT AND HIGHLY
PREJUDICIAL EVIDENCE VIOLATED PETITIONER'S
DUE PROCESS RIGHTS UNDER THE FIFTH,
EIGHTH  AND FOURTEENTH AMENDMENTS OF
THE UNITED STATES CONSTITUTION.**

**REPLY TO GROUND X**..........................................................................    **28**

    **THE OCCA UNREASONABLY REJECTED PETITIONER'S
CLAIM THAT THE TRIAL COURT ERRED IN FAILING TO
CHANGE VENUE AND  DENIED PETITIONER HER  RIGHTS
GUARANTEED BY THE UNITED STATES CONSTITUTION
BY OVERRULING PETITIONER'S NUMEROUS MOTIONS
FOR CHANGE OF VENUE AND FORCING HER TO BE TRIED
IN A IN A COMMUNITY PERVADED BY  PREJUDICIAL
PRETRIAL PUBLICITY.**

**REPLY TO GROUND XIII**........................................................................    **36**

    **THE OCCA'S REJECTION OF PETITIONER'S PROSECUTORIAL
MISCONDUCT CLAIMS WAS UNREASONABLE AND  SHOULD
NOT BE GIVEN DEFERENCE BY THIS COURT AS THE
MISCONDUCT VIOLATED PETITIONER'S RIGHTS
GUARANTEED BY THE EIGHT AND  FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION.**

**REPLY TO GROUND XVIII**........................................................................... **39**

    **PETITIONER SHOULD HAVE BEEN GRANTED AN
EVIDENTIARY HEARING IN STATE COURT, AND
SHE SHOULD BE GRANTED AN EVIDENTIARY HEARING
IN THIS COURT.**

**CERTIFICATE OF SERVICE**.......................................................................... **47**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Blumenthal v. United States*, 332 U.S. 539 (1947)............................................     13

*Boyd v. Ward*, 179 F.3d 904 (10th Cir. 1999)...................................................     45

*Bruton v. United States*, 391 U.S. 123 (1994)...................................................     13

*Caldwell v. Mississippi*, 472 U.S. 320  (1985).................................................     39

*Chambers v. Florida*, 309 U.S. 227 (1940)........................................................     30

*Chambers v. Mississippi*, 410 U.S. 284 (1973)..................................................     7, 10

*Crane v. Kentucky*, 476 U.S. 683 (1986)............................................................     10

*Crawford v. Washington*, 541 U.S. 36 (2004)...................................................     11, 17

*Darden v. Wainwright*, 477 U.S. 168 (1986)......................................................     14

*Duvall v. Reynolds*, 139 F.3d 768 (10th Cir. 1998)............................................     13

*Eddings v. Oklahoma*, 455 U.S. 104 (1982)........................................................     39

*Ellis v. Mullin,* 326 F.3d 1122 (10th Cir. 2002) ................................................     2, 10

*Greer v. Miller*, 483 U.S. 756 (1987)...................................................... 39

*Groppi v. Wisconsin*, 400 U.S. 505 (1971)........................................... 30

*Hale v. Gibson*, 227 F.3d. 1298 (10th Cir. 2000) ............................... 29, 33

*Hicks v. Oklahoma,* 447 U.S. 343 (1980)............................................. 41

*Hitchcock v. Dugger*, 481 U.S. 393 (1987)......................................... 39

*Holmes v. South Carolina* 547 U.S. 319 (2006)................................. 10

*Irvin v. Dowd*, 366 U.S. 717 (1961)..................................................... 30

Lamb v. Oklahoma County District Court, 229 Fed. Appx. 690
   (10th Cir. 2007)............................................................... 12, 13, 15, 20, 28

*Lisenba v. California*, 314 U.S. 219 (1941)............................... 12, 13, 15, 20, 28

*United States v. McVeigh*, 918 F.Supp. 1467(W.D. Okla. 1996) ................ 35

*Michelson v. United States*, 335 U.S. 469 (1948)........................... 14

*Miller v. Champion*, 161 F.3d 1249(10th Cir. 1998)...................... 39, 42

*Murphy v. Florida*, 421 U. S. 794 (1975)......................................... 30, 34

*Napue v. Illinois*, 360 U.S. 264(1959)............................................... 37

*Payne v. Tennessee*, 501 U.S. 808 (1991). ........................................ 12, 14

*Rideau v. Louisiana*, 373 U.S. 723 (1961)..................................... 30

*Romano v. Oklahoma*, 512 U.S. 1, 12 (1994)........................... 12, 13, 15, 20, 28

*Sheppard v. Maxwell*, 384 U.S. 333 (1966).................................. 30

*Skipper v. South Carolina*, 476 U.S. 1 (1986).............................. 39

*Spears v. Mullin,* 343 F.3d 1215, 1226 (10th Cir. 2003)..................... 12, 13, 15, 20, 28

iii

*Strickland v. Washington*, 466 U.S. 668 (1984)................................. 21, 23, 24, 45, 46

*Taylor v. Illinois*, 484 U.S. 440 (1988)........................................... 4, 5, 6,

*Tumey v. Ohio*, 273 U.S. 510 (1927).............................................. 31

*United States v. Commanche*, 577 F.3d 1261(10th Cir. 2009) .................... 14

*United States v. Gabaldon,* 91 F.3d 91(10th Cir. 1996)............................... 39

*Washington v. Texas*, 388 U.S. 14 (1967)........................................ 6

*Welch v. Sirmons,* 451 F.3d 675 (10th Cir. 2006)............................... 12, 14

*Whorton v. Bockting*,  549 U.S. 406 (2007).................................... 11

*Wiggins v. Smith,* 539 U.S. 510 (2003) ........................................ 46

*Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997)................................11, 12, 15, 20

*Wilson v. Sirmons*, 537 F.3d 1064 (10th Cir. 2008)........................... 43

*Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) ....................... 22, 23, 25, 40, 42, 45

*Woodson v. North Carolina*, 428 U.S. 280 (1976)........................................11, 12, 15


**STATE CASES**

*Atterberry v. State,* 731 P.2d 420 (Okl.Cr. 1986)........................................ 38

*Bechtel v. State*, 738 P.2d 559 (Ok. Cr.1987)................................ 37

*Dewberry v. State*, 954 P.2d 774 (Okla. Cr. App. 1998)............................ 42

*Hancock v. State*, 155 P.3d 796 (Okla. Cr. 2007)........................................ 44, 45

*Harjo v. State*, 797 P.2d 338 (Okl.Cr. 1990).................................................. 19

*Laske v. State*, 694 P.2d 536 (Okl.Cr. 1985)..................................................... 18

*McCarty v. State*, 765 P.2d 1215 (Ok. Cr.1988)............................................. 37

*McGee v. State*, 127 P.3d 1147 (Okl. Cr. 2006)............................................. 19

*Omalza v. State*, 911 P.2d 286 (Okl.Cr. 1995)............................................... 19

**STATUTES**

Okla. Stat. tit. 21, §§ 421, 423 (2001)............................................................. 19

Okla. Stat. tit. 12, § 2801(B)(2)(e)................................................................... 20

Okla. Stat. tit. 12, § 2802.................................................................................. 20

**RULES**

Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*,
    Title 22, Ch. 18 App.....................................................................22, 40, 41,42,  43, 45

Rule 9.7, *Rules of the Oklahoma Court of Criminal Appeals*,
    Title 22, Ch. 18 App.............................................................................44, 46

EXHIBIT 1          Reply Brief of Petitioner in  James Dwight Pavatt v. Randall G.
                   Workman, Case Number 08-470-R, Western District of Oklahoma.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRENDA EVERS ANDREW, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CIV-00832R |
| | ) | |
| MILLICENT NEWTON-EMBRY, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | |

PETITIONER'S REPLY TO RESPONDENT'S RESPONSE
TO PETITION FOR WRIT OF HABEAS CORPUS
_____

Petitioner Brenda Evers Andrew submits the following replies to the Respondent's

Response to Petition For Writ of Habeas Corpus regarding the   following claims presented

in her Petition For a Writ of Habeas Corpus.

**GROUND I**.    **THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
REFUSING TO PERMIT THE DEFENSE TO PRESENT THE TESTIMONY OF
WITNESSES WHOSE TESTIMONY WAS CRITICAL TO THE DEFENSE. THE COURT'S
ACTIONS VIOLATED PETITIONER'S RIGHTS UNDER THE SIXTH, EIGHTH, AND
FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

Petitioner was prevented by the trial court from presenting her defense due to  the

court's exclusion of six defense witnesses whose testimony was critical, and the exclusion

affected both stages of Petitioner's trial.  The exclusion was due to defense counsel's alleged

insufficient summaries of expected testimony of these witnesses.   However, these witnesses

were known to the State and the State's investigation in the case included interviews of these

witnesses.  Further, the State did not request even a short continuance to further interview the witnesses, and the trial court rejected the suggestion of Petitioner's counsel for a continuance which would have alleviated any problem the State could have had with the presentation of testimony from these witnesses.  (Tr. 3387-88)

The State's theory was that Petitioner conspired with James Pavatt to kill her husband, Robert Andrew, at Petitioner's home when Mr. Andrew came to pick up the couple's children for visitation.   The State also theorized that Petitioner refused to give Robert Andrew back his firearm when the couple separated, all part of a plan to use this particular firearm to murder him.   The State also presented the Petitioner as uncaring and unaffected by the shooting of Robert Andrew.

The testimony of Petitioner's defense witnesses likely would have created a reasonable doubt of her guilt, at least in the mind of one juror.   *Ellis v. Mullin,* 326 F.3d 1122, 1128 (10th Cir. 2002).   The jury sent a note to the trial court during second stage deliberations with the following question:

> "*Does life without parole mean incarceration in prison until her natural death*?"

(Court Ex. 8)   Had the jury heard the excluded testimony, at least one juror might not have voted for the death penalty.   The cumulative effect of the errors in excluding the witnesses contributed to the conviction and death sentence.   Furthermore, there were other trial errors and the cumulative effect of all the errors  contributed to the conviction and to the sentence of death.

The Respondent recited the OCCA's recognition that "[t]he right to call witnesses to present a defense is a fundamental element of due process"and that "[t]he exclusion of evidence might be the appropriate sanction for a discovery code violation in the most severe cases, where the violation is 'wilfull and motivated by a desire to obtain a tactical advantage. Alternative sanctions are appropriate in other cases." Doc. 42 at 37.  The Respondent argues that this language is consistent with the Supreme Court's discussion of this same issue in *Taylor v. Illinois*, 484 U.S. 440, 410-18 (1988).  Doc. 42 at 37.   However, even though exclusion of the **one**  witness in *Taylor* was held proper, the Court stated that there was "no constitutional error *on the specific facts of this case*."  *Id*. at 402.  (Emphasis added)  Unlike Petitioner's case, there were two  defense witnesses in *Taylor[1]*, whose names even had never been disclosed to the prosecution prior to trial.   Petitioner's counsel disclosed **all** defense witnesses, including the six who were excluded,  prior to trial, all of whom were already known by the State and had been interviewed by the State.   In *Taylor,* defense counsel actually called only one of the undisclosed witnesses and, therefore, *Taylor* involved the preclusion of only one defense witness, whereas in Petitioner's case six witnesses were precluded. Another very important factor on which *Taylor* was based, and clearly not present in Petitioner's case,  is that the defendant in *Taylor*, after hearing the prosecution witnesses

---

[1]However, defense counsel attempted to call only one of those witnesses.

3

testify, attempted to call the two undisclosed  witnesses whom he alleged had been present at the time of the crime.  *Taylor v. Illinois*,  484 U.S.at 403, n.5.  Footnote six in *Taylor* explains that the Court was concerned that the defendant was fabricating evidence - claiming that the two witnesses were present at the crime scene, when in fact they might not really have been present.  In *Taylor*, an in camera hearing confirmed the trial court's concerns, as it was developed that in fact the witnesses had not been present at the crime scene.  The Supreme Court  noted the trial court's concern:

> "There's all sorts of people on the scene, and all of these people should have been disclosed before."

> "When you bring up these witnesses at the very last moment, there's always the allegation and the thought process *that witnesses are being found that really weren't there*. And it's a problem in these types of cases, and it should be -- should have been put on that sheet a long time ago."

*Taylor v. Illinois*, 484 U.S., n.6.  (Emphasis added)    The Court also stated:

> "[i]t would demean the high purpose of the Compulsory Process Clause to construe it as encompassing an absolute right to an automatic continuance or mistrial to allow *presumptively perjured* testimony to be presented to a jury."  *Id.* at 416. (Emphasis added)

In *Taylor*, defense counsel also made misrepresentations to the trial court, alleging that one of the witnesses could not be found, when in fact he had actually interviewed the witness.[2]  In addressing the misrepresentations the Supreme Court stated:

_____

[2] The allegations of the defense counsel were as follows:
"During the direct testimony of the witnesses, your Honor, called by the State, I was informed of some additional witnesses which could have and probably did, in

We are also concerned with the impact of this kind of conduct on the integrity of the judicial process itself. The trial judge found that the discovery violation in this case was both willful and blatant. In view of the fact that petitioner's counsel had actually interviewed Wormley during the week before the trial began, and the further fact that he amended his Answer to Discovery on the first day of trial without identifying Wormley, while he did identify two actual eyewitnesses whom he did not place on the stand, the inference that he was deliberately seeking a tactical advantage is inescapable. Regardless of whether prejudice to the prosecution could have been avoided in this particular case, it is plain that the case fits into the category of willful misconduct in which the severest sanction is appropriate.

*Id*. at 417-418.

The Court in *Taylor* noted that even if counsel had not known the location of the undisclosed witness that he could have at least disclosed the name of the witness. Considering the disclosure of the names of the Petitioner's witnesses, the summary of the testimony which counsel did provide, and the fact that the State had interviewed all these witnesses, it can hardly be said that counsel's actions were similar to those in *Taylor*.

---

fact, see this entire incident. We at this time would ask to amend our Answer to include two additional witnesses."
"THE COURT: Who are they?"
"MR. VAN: One is a guy named Alfred Wrdely of which -- "
"THE DEFENDANT: Excuse me, W-r-d-e-l-y."
"MR. VAN: Whose address I do not have. I'm going to have to see if I can locate him tonight. And Pam Berkhalter."
App. 12.
*Taylor v. Illinois*, at footnote 4.    The defense attorney continued the misrepresentation:

"THE COURT: Yeah, but the defendant was there, and the defendant is now telling you Pam Berkhalter, and he's now telling you Alfred Wrdely. Why didn't he tell you that sometime ago? He's got an obligation to tell you."
"MR. VAN: That is correct, Judge. He, in fact, told me about Alfred sometime ago. **The problem was that he could not locate Alfred**"
*Id*. at 2-13.
*Taylor v. Illinois*, at footnote 5.

5

Even though defense counsel in *Taylor* failed to even disclose the names of the known witnesses, still the trial court, before deciding whether or not to exclude the witnesses, "directed counsel to bring them in the next day, at which time he would decide whether they could testify." *Id.* at 404. Accordingly, the witness was allowed to testify outside the jury where "*[i]t developed that Wormley had not been a witness to the incident itself*"; that the witness actually only had met the defendant "over *two years after* the incident"; and that "defense counsel had visited him at his home on the Wednesday of the week before the trial began." *Id*. at 404-405. (Emphasis added) "Thus, his testimony rather dramatically contradicted defense counsel's representations to the trial court." *Id*. at 405. The trial court found a blatant and willful violation of the rules. *Id*. The Supreme Court held that "[t]he pretrial conduct revealed by the record in this case gives rise to a sufficiently strong inference that 'witnesses are being found that really weren't there,' to justify the sanction of preclusion." *Id.* at 417. In Petitioner's case there was no finding, or even allegation, that the defense witnesses would have offered perjured testimony, and there were no misrepresentations made by defense counsel to the Court.

The most severe sanction of exclusion of a criminal defendant's witnesses is appropriate in only the most extreme situations. *Washington v. Texas*, 388 U.S. 14 (1967). While under the specific facts present in *Taylor*, the most severe of sanctions was appropriate, clearly in Petitioner's case this sanction constituted a violation of her right to due process, her fundamental right to present witnesses in her defense, and her right to a reliable sentence.

6

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

**Sergeant Larry Northcut and Officer Frost**.    The State theorized that Petitioner kept Robert Andrew's firearm as a weapon to kill him.  Northcutt and  Frost would have testified that she obtained additional neighborhood police patrols because she was afraid of Mr. Andrew, showing it unlikely that she planned to kill him at her home, in the garage with doors wide open in plain view of officers who might drive by, and would have provided evidence of a reason to keep the firearm other than to kill Mr. Andrew.   The error in preclusion of Northcutt and Frost testimony was made more prejudicial due to the admission at trial of Robert Andrew's statement that Petitioner refused to let him to get his gun which the OCCA held to be error.  Andrew v. State, 164 P.3d at 188.

Respondent argues that Northcut was allowed to testify about his "employment as off-duty security at the housing addition where Petitioner lived" ( Doc. 42 at 39), and that "[t]he only information that was kept from the jury was that Petitioner had requested those patrols"; that "the jury was aware that Officer Frost had stopped a car an hour before the murder in front of Petitioner's residence for a routine traffic violation and that he had been patrolling that particular area at that particular time because of the detour of traffic from a nearby closed bridge."  Doc. 42 at 42-43.  The Respondent argues that this "evidence alone suggests Petitioner was aware of the police presence around her neighborhood."  Doc. 42 at 43.  This

7

argument amounts at most to speculation as to whether the Petitioner was even aware of the traffic stop and does not address the critical issue that Petitioner, rather than some other resident, requested the extra patrol.    Without knowledge that it was the Petitioner who requested the security, the fact that there was extra patrol could be interpreted by the jury that Mr. Andrew  requested the security for fear of Petitioner.

**Lisa Gisler and Carol Shadid**.    Petitioner disagrees with Respondent's allegation that the State's expert and the defense expert both "testified that Petitioner's gunshot wound was evidence the murder was staged," citing specific transcript pages containing testimony of the experts.   Doc. 42 at 49.   The State's expert testified that the location of the wound to Ms. Andrew's arm was located in an area that would do the least damage, and specifically stated that he was "not able to eliminate" staging    (Tr. 3208, 3232), and that the facts present "requires that you *consider* the *possibility* of some staging relative to the phone and the gunshot" to Petitioner's arm. (Tr. 3233)  Finally, the State's expert testified that "[a]nd again, I cannot say that that is definitely staging.  I wouldn't want to mislead you.  I cannot say that. I did *consider* that as a *possibility*."   (Tr. 3234) The State's expert testified that there was no evidence that Petitioner participated in any staging.   (Tr. 3271)  The Respondent cited the OCCA finding that the prosecution and defense experts testified that Petitioner's gunshot wound was evidence of a staged event.  Doc. 42 at 48, citing *Andrew v. State*, 164 P.3d at 197. The defense expert testified that the gunshot wound involved staging; that the shooter was involved in the staging; that Petitioner could not have shot herself in the arm; and that there

was no physical evidence that Petitioner was involved in the staging of the shot.  (Tr. 3633, 3634, 3635)  The Respondent's argument and the OCCA finding on this issue is wrong and is entitled to no deference.

Ms. Gisler, who was inside her own house, understandably heard only one shot, likely due to the rapid succession of the shots, but her testimony is helpful because both Petitioner and Shadid heard shots in such rapid succession that not only does it support Petitioner's version of the quick firing of the shots, it helps show Petitioner was not involved in the staging as there was no time for her to help arrange an injury to herself.

**Officer Warren**.  Respondent's argues the OCCA correctly found the excluded testimony of Warren was cumulative.   This ignores critical facts not addressed by other witnesses but which Warren could have provided:  Petitioner asked Warren to help her husband, which is inconsistent with the State's portrayal of her as uncaring about the shooting of Mr. Andrew, and even though she was wounded she focused on Mr. Andrew.

**Donna Tyra**.   The Respondent, like the OCCA, ignores the fact that Ms. Tyra, a detention officer in the Oklahoma County Jail, would have testified that even though jail snitch Teresa Sullivan may have access to other inmates at the Oklahoma County Jail, and could communicate with them,  Sullivan was not allowed to have contact with Petitioner, nor was Sullivan able to talk to Petitioner through the door or by notes.  (Tr. 3776-78)  Ms. Sullivan's testimony that Petitioner confessed to her was very prejudicial and the testimony of Ms. Trya could have countered Sullivan's allegation.

9

There is a reasonable probability the errors in excluding these witnesses affected the outcome of Petitioner's trial. *Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002). The testimony would have created a reasonable doubt that did not exist without the evidence, or the jury in second stage would not have imposed the death sentence. This is supported by the jurors' note to the trial court asking about the meaning of life without parole. (Court Ex. 8)

The exclusion of evidence which bears persuasive assurances of trustworthiness may not be based upon mechanistic application of the rules of evidence when that evidence is critical to a defendant's case. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or confrontation clauses of the Sixth Amendment, the constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina* 547 U.S. 319 (2006), citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Petitioner is entitled to habeas relief on the claims set forth in Ground I. She also has included a claim of cumulative error in Ground XV and even if one error singly does not entitle her to relief, the cumulative effect of the errors certainly warrant habeas corpus relief.

**GROUND II.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING A TORRENT OF HEARSAY STATEMENTS FROM THE DECEASED THAT PERVADED THE PROCEEDINGS AND VIOLATED PETITIONER'S RIGHT TO CONFRONT THE WITNESSES AGAINST HER UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

Petitioner claims prejudicial error occurred throughout the first stage of the trial because the jury was constantly subjected to statements purportedly made by Robert Andrew before his

10

death.  The OCCA found many errors involving hearsay but held each error harmless. Some of the statements were testimonial.

Petitioner admits Respondent is correct that statements which are non-testimonial are not protected by the Confrontation Clause  as the Supreme Court has determined subsequent to its decision in *Crawford v. Washington*, 541 U.S. 36 (2004).  *See*, *Whorton v. Bockting*, 549 U.S. 406 (2007).  Even though the non-testimonial statements are not protected by the Confrontation Clause, and even if the statements can be held to fall within a hearsay exception, which Petitioner disputes, the statements should have been excluded because the prejudice outweighed the probative value of the statements, denying a fundamentally fair trial.

 Respondent states that review of non-testimonial statements using state hearsay rules are not cognizable on federal habeas review,  Doc. 42 at 55,  which Petitioner disputes. The admission of the evidence "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997). *See also Lisenba v. California*, 314 U.S. 219, 236 (1941).    The Supreme Court held that the Eighth and Fourteenth Amendments demand a higher degree of reliability and scrutiny in capital cases.   *Woodson v. North Carolina*, 428 U.S. 280 (1976). Acknowledging that "[f]ederal habeas review is not available to correct state law evidentiary errors" but "is limited to violations of constitutional law", the Tenth Circuit explained:

> When, as here, habeas petitioners challenge the admission of photographic evidence as violative of the Constitution, this court considers "whether the admission of evidence . . . so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process."

*Spears v. Mullin,* 343 F.3d 1215, 1226 (10ᵗʰ Cir. 2003), *citing Romano v. Oklahoma*, 512 U.S. 1, 12 (1994).  See also,  La*mb v. Oklahoma County District Court*, 229 Fed. Appx. 690, 694 (10ᵗʰ Cir. 2007).  Again, in regards to the admission of other crimes evidence the Tenth Circuit noted that research revealed no Supreme Court cases "directly addressing the constitutionality of a trial court admitting evidence of a defendant's other crimes", and citing Supreme Court law explained:

> Thus, Welch must rely on the more general principal that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair..."

*Welch v. Sirmons,* 451 F.3d 675 (10ᵗʰ Cir. 2006), citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).   The Court explained that fundamental unfairness will be shown if "the probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice  flowing from its admission..."  *Id.* at 688.   Clearly, the admission of the evidence about which Petitioner complains denied her a fundamentally fair trial.

In regards to the OCCA's decision that the admission of inadmissible hearsay for which no exception existed constituted harmless error, the Petitioner claims that the decision is contrary to, or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of the facts in light of the evidence presented at trial.  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10ᵗʰ Cir. 1997); *See also Lisenba v. California*, 314 U.S. 219, 236 (1941);  *Woodson v. North Carolina*, 428 U.S. 280 (1976;  *Spears v. Mullin,* 343 F.3d 1215, 1226 (10ᵗʰ Cir. 2003), *citing Romano v.*

12

*Oklahoma*, 512 U.S. 1, 12 (1994); *Lamb v. Oklahoma County District Court*, 229 Fed. Appx. 690, 694 (10th Cir. 2007).

**GROUND III.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF OTHER CRIMES AND BAD ACTS WHICH HAD NOTHING TO DO WITH THE OFFENSE CHARGED, VIOLATING PETITIONER'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Petitioner's conviction and death sentence was based partly on the admission of numerous incidents of inadmissible and highly prejudicial "bad act" evidence.  Respondent claims Petitioner is not entitled to habeas relief because the Supreme Court has not directly addressed the constitutionality of a trial court admitting evidence of a defendant's other crimes.  Doc. 42 at 64-65.

"An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence." *Bruton v. United States*, 391 U.S. 123, 131 (1994) (citing *Blumenthal v. United States*, 332 U.S. 539, 599-560 (1947)).   Such evidence that fatally infects the trial and results in the denial of the fundamental fairness that is the essence of due process includes prior crimes.  *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998).

The Tenth Circuit has noted that research revealed no Supreme Court cases "directly addressing the constitutionality of a trial court admitting evidence of a defendant's other crimes", and explained:

Thus, Welch must rely on the more general principal that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" when

13

"evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair..."

*Welch v. Sirmons,* 451 F.3d 675 (10th Cir. 2006), *(*citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83).   "When other crimes evidence is so prejudicial it denies a defendant his right to be tried only for the offense charged, or where its minimal relevancy suggests the possibility the evidence is being offered to show a defendant is acting in conformity with his true character, the evidence should be suppressed. *Welch v. Sirmons*, 451 F.3d 675, 685 (10th Cir. 2006).

Recently in *United States v. Commanche*, 577 F.3d 1261, 1269 (10th Cir. 2009) the Court held that the admission of impermissible bad acts evidence "had a substantial impact on the outcome of the trial and was not harmless."   The Court, relying on *Michelson v. United States*, 335 U.S. 469, 476-76 (1948) stated:

> Using other bad acts to demonstrate conformity with a particular character trait is prohibited because it is prejudicial:
> The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.   The overriding policy of excluding such evidence, *despite its admitted probative value*, is the practical experience that its disallowance tends to prevent confusion of the issues, unfair surprise and undue prejudice.

*United States v. Commanche*, 577 F.3d at 1267-68.   (Emphasis added)    *United States v. Commanche* involved Fed.R.Evid. 404(b) regarding bad act evidence which is identical to the Oklahoma rule regarding bad act evidence, Okla. Stat. tit. 12, § 2404(B), which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the

14

character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The OCCA found that most of the complained-of-evidence was relevant, with the exception of the following which the OCCA found to be irrelevant and erroneously admitted, but harmless:

> "Other evidence included Higgins' testimony that Appellant had 'come on to' his two adult sons when they were building a deck for the Andrews; David Ostrowe's testimony that she was dressed provocatively when the Andrews and the Ostrowes went to dinner together (6 - 8 weeks before the murder), someone in the restaurant called Appellant a 'hoochie,' and inappropriate talk about a trip to Mexico; Ron Stump's testimony that Appellant changed her hair color after learning what color of hair Ron liked; and David Head's testimony, over objection, about Appellant threatening to kill him."  *Andrew v. State*, 164 P.3d at 191-193.

The OCCA also found that evidence concerning yet another individual, Rick Nunley, was harmless.  *Id*. at 192.

Even assuming, arguendo, that some of the evidence was relevant as determined by the OCCA, still the probative value of the evidence was outweighed by the prejudice resulting therefrom, constituting a denial of due process.    *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997);. *Lisenba v. California*, 314 U.S. 219, 236 (1941);  *Woodson v. North Carolina*, 428 U.S. 280 (1976);  *Spears v. Mullin,* 343 F.3d 1215, 1226 (10th Cir. 2003), *citing Romano v. Oklahoma*, 512 U.S. 1, 12 (1994); *Lamb v. Oklahoma County District Court*, 229 Fed. Appx. 690, 694 (10th Cir. 2007).

**GROUND V.    INADMISSIBLE HEARSAY WAS IMPROPERLY ADMITTED AGAINST PETITIONER AS "COCONSPIRATOR HEARSAY," DEPRIVING PETITIONER**

**OF HER RIGHTS OF CONFRONTATION AND CROSS EXAMINATION, IN VIOLATION OF THE 6th AND 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS ARTICLE II, SECTION 20 OF THE OKLAHOMA CONSTITUTION.**

Petitioner claims error in the admission of statements made by James Pavatt to his daughter, Janna Larson, allegedly in October, 2001. Over objection, the trial court allowed the State to present through Janna Larson certain statements which Mr. Pavatt allegedly made to her, which he claimed were made to him by Petitioner:

> "[Pavatt] said to me — How it started out, the conversation was he said you're never going to believe what that **nuttier than a fruit cake woman** asked me to do. And then he told me that she asked him if he would kill her husband or if he knew someone that could do it. And I said, "You're kidding." And he said again, and I said she . . . I can't remember the exact words how it was, but that's what it was."

The highly prejudicial testimony affected the verdict in both stages of trial.

The Respondent claims the statement was not protected by the Confrontation Clause, claiming the statement was non-testimonial. Petitioner admits that non-testimonial statements are not protected by the Confrontation Clause. The State also claims that the statements were "co-conspirator" statements and, therefore, admissible at trial. In regards to Petitioner's claim that she was deprived of statutorily protected rights, constituting a violation of due process, the Respondent erroneously claims that this claim was not exhausted. In Petitioner's Reply to Proposition V she specifically cited Okla. Stat. tit. 21, §423 which provides that an agreement alone cannot constitute an conspiracy and argued that "under Oklahoma law, a statement cannot be made during the course of a conspiracy before the first overt act." Proposition V.

16

In support of its position, Respondent incorporated its argument at Ground II that "[t]o the extent Petitioner attempts to secure review of the non-testimonial statements using state hearsay rules, such claims are simply not cognizable on federal habeas review."   Doc. 42 at 89.  Petitioner incorporates her argument set forth in Ground II that such claims are reviewable on habeas review, and that she was denied fundamental fairness that is the essence of due process as a result of the admission of this double hearsay statement.

Petitioner has admitted that non-testimonial statements are not protected by the Confrontation Clause as held in *Crawford v. Washington*, 541 U.S. 36 (2004) and that subsequent to Crawford the requirements of *Ohio v. Roberts*, 448 U.S. 56 (1980) were overruled, affording no constitutionally protected right against non-testimonial hearsay. However, even if it is determined that the particular statement which Petitioner complains of is not testimonial, still the statement was inadmissible and was highly prejudicial to Petitioner.

 In order to fall under "co-conspirator" statements it was necessary to show that Mr. Pavatt's statement fell within the period of the conspiracy, and was made in furtherance of the conspiracy. Even if a conspiracy existed at the time of the statement, the statement was not made in furtherance of the statement.  Also, as argued in Petitioner's Petition, the trial court's arbitrary ruling that the alleged conspiracy began on September 1 allowed the State the leeway to ensure  that the statements were within the period of the conspiracy, even though Ms. Larson could not give a specific date of her alleged conversation with her father wherein he allegedly made the statements to her.

17

The Information alleging a conspiracy began in September of 2001 alleges three overt acts: (1) co-defendant Pavatt's purchase of a handgun on November 14, 2001; (2) Petitioner's allegedly arranging to provide Pavatt access to the neighbor's home to hide from police on November 20, 2001; and (3) Petitioner's act of inviting Robert Andrew into the garage, also on November 20, 2001. Assuming *arguendo* that any of these acts constitutes a valid "overt act," the earliest date for the conspiracy, according to the State's own allegations, is November 14, 2001, which was after James Pavatt allegedly made the alleged statement to Janna Larson. Additionally, there is no indication whatsoever when Petitioner allegedly made the statement.

There was no evidence that a conspiracy existed at the time Mr. Pavatt allegedly made the statement. The evidentiary prerequisites for the determination of the statements as "co-conspirator" statements were not present. Petitioner has presented substantial argument in her Petition showing that no conspiracy existed at the time of the alleged statement.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 12 O.S. 2001, § 2801(A)(3). Such evidence "is not admissible except as otherwise provided by an act of the legislature." § 2802. The Oklahoma Legislature has provided for admission against a party the statements of her coconspirators made "during the course and in furtherance of the conspiracy." § 2801(B)(2)(e). Pursuant to *Laske v. State*, 694 P.2d 536, 538 (Okl.Cr. 1985)[3],

---

[3]In *Harjo* the OCCA modified *Laske v. State* insofar as *Laske* is inconsistent with the rule that the statements of an alleged co-conspirator may be considered in determining whether the prosecution has made the requisite factual showing of the existence of a conspiracy. *Harjo v. State,* 797 P.2d at 345.

and *Harjo v. State*, 797 P.2d 338, 343-45 (Okl.Cr. 1990), the trial judge is required to make a threshold determination as to the admissibility of coconspirator hearsay statements. Such statements are admissible only where the trial court finds:

> [1] a conspiracy existed; [2] both the defendant and the alleged coconspirator declarant were parties to the conspiracy; [3] the statements were made during the duration of the conspiracy; and [4] the statements furthered the goals of the conspiracy.

*Omalza v. State*, 911 P.2d 286, 296 (Okl.Cr. 1995) (citing *Harjo*, 797 P.2d at 345).

As shown at length in Petitioner's Petition, the evidence in this case fails at every prerequisite. The existence of a conspiracy must be proved by a preponderance of the evidence. *Omalza*, 911 P.2d at 296. As the OCCA has recently re-affirmed, the elements of a conspiracy are: "(1) an agreement to commit the crime(s), and (2) an overt act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose." *McGee v. State*, 127 P.3d 1147 (Okl. Cr. 2006) (citing Okla. Stat. tit. 21, §§ 421, 423 (2001). Here, however, there was no evidence of any agreement to commit a crime. Indeed, the statement itself, *if* believed, actually *disproves* any conspiracy theory, as Pavatt declined the alleged solicitation by Petitioner, whom he described as "nuttier than a fruitcake." (Tr. 2966; PH 978) The hearsay statement alone cannot provide the sole basis for establishing the foundational requirements. *Harjo v. State*, 797 P.2d at n.3. Pavatt's alleged statement certainly did not further the goals of any alleged conspiracy, and would even have the opposite effect of harming the conspiracy.

The Petitioner specifically argued that Okla. Stat. tit. 21, § 423 had been violated in that the elements of a conspiracy did not exist and that the statements were not admissible under

19

Okla. Stat. tit. 12, § 2801(B)(2)(e),  but still the prejudicial statements were admitted against her.   She also argued that out-of-court statements are not admissible except as otherwise provided by an act of the legislature pursuant to Okla. Stat. tit. 12, § 2802.   Doc. 26 at 133. Respondent cannot show that the Petitioner failed to exhaust her claim that she was entitled to her statutorily conferred rights and that the failure to afford her the provisions set out in the statutes deprived her of due process.    In Petitioner's case the admission of the highly prejudicial statements rendered the proceedings fundamentally unfair, entitling  Petitioner to habeas relief as requested in her Petition.  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997);  *See also Lisenba v. California*, 314 U.S. 219, 236 (1941); *Woodson v. North Carolina*, 428 U.S. 280 (1976); *Spears v. Mullin,* 343 F.3d 1215, 1226 (10th Cir. 2003), *citing Romano v. Oklahoma*, 512 U.S. 1, 12 (1994); *Lamb v. Oklahoma County District Court*, 229 Fed. Appx. 690, 694 (10th Cir. 2007).

**GROUND VI    PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND APPELLATE COUNSEL, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

 The Respondent claims that none of the claims which Petitioner set out in Ground VI constitute ineffective assistance of counsel.

**Failure to Provide Adequate Notice of Critical Defense Testimony**.

Ground I involves Petitioner's claim that the exclusion of the testimony of six defense witnesses constituted a denial of her right  to call witnesses to present a defense which is a fundamental element of due process.   The State's basis for objecting to the admission of six

defense witnesses was that defense counsel failed to provide adequate summaries of the testimony to be given by these witnesses.    The trial court stated that the problems were a result of the failure of the defense team to prepare for trial. (Tr. 3391-92)  The OCCA did find errors in the exclusion of some of the evidence, but held the errors were harmless.  *Andrew v. State*, 164 P.3d at 198.  The  OCCA also found that Petitioner was not prejudiced by defense counsel's failure to provide adequate witness summaries.  *Id.*   The Respondent claims this decision was not contrary to, or an unreasonable application of *Strickland,* or based on an unreasonable determination of the facts.   Doc. 42 at 105.   Petitioner incorporates Ground I of her Petition, as well as her Reply to Ground I above, in support of her claim of ineffective assistance of counsel.

**Failure to Make Evidentiary Objections**.

Petitioner claimed in Ground II of her Petition that admission of hearsay statements of Robert Andrew violated her right to confrontation.   Petitioner also claimed that the evidence was unduly prejudicial, rendering her trial fundamentally unfair. (Doc 26 at 51-52)   Petitioner relies on Ground II of her Petition, as well as her above reply to Ground II, in support of her claim of ineffective assistance in regards to this claim.

**Failure to Submit Certain Blood Evidence for DNA Testing**.

Petitioner set forth in her Petition at Ground VI, Parts B(I) and B(II), that the decisions of the OCCA in regards to her Rule 3.11 claims of ineffective assistance of counsel, and her Rule 9.7 claims of ineffective assistance of counsel which she  presented to the state court on

direct appeal and in post conviction are not entitled to deference because the claims were not adjudicated on the merits.    In regard to the failure of defense counsel to submit certain blood evidence for DNA testing, the Respondent states  that "it is clear that the OCCA applied Rule 3.11(B) in resolving this particular ineffectiveness claim", and "expressly refers to the 'clear and convincing' evidence standard."  Doc. 42 at 109.    The Respondent "maintains, as it did in *Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (*en banc*), that Rule 3.11 is a less demanding standard than *Strickland*" and "Respondent anticipates a decision from the OCCA well before this habeas action is concluded clarifying that very issue in the State's favor and ultimately resolving the issue", and that Respondent "will file leave to supplement with such authority when it is handed down by the OCCA."  Doc. 42 at 110.

The Respondent claims that in regards to Petitioner's case  "there is really no question that the state court's decision constitutes an adjudication on the merits to which AEDPA deference should apply".  Doc. 42 at 110.  But, Respondent recognized that "AEDPA's applicability is complicated by the specific language used by OCCA in its opinion denying this particular ineffectiveness claim" suggests that the OCCA  "Simply utilized a form of short-hand in applying the Rule 3.11 standard."  Doc. 42 at 111.

Petitioner set forth substantial argument and authority in Ground VI, Part B(I) in support of her claim of ineffective assistance of counsel in regards to this claim.  Petitioner's claims of ineffective assistance of counsel, including this claim,  were not adjudicated on the merits in state court and, therefore, she is entitled to an evidentiary hearing in this court

because the state court did not apply the *Strickland* standard to the non-record evidence submitted with her requests for evidentiary hearings in state court.  *See Wilson v. Workman*, 577 F.3d at 1292 (10th Cir. 2009).  In *Wilson* the Court differentiated between cases in which the state court adjudicated ineffective assistance claims on the merits  and those cases which had not been adjudicated, stating:

> "The reason they constitute decisions on the merits is that the OCCA in these cases applies the *Strickland* standard to the evidence, without regard to the additional "clear and convincing evidence" hurdle of Rule 3.11(B)(3)(b)."

*Id.*  The opinion of the OCCA also included the following language in regards to Petitioner's Rule 3.11 claim regarding failure to present blood spatter evidence:

> "This evidence does not show by **clear and convincing evidence** that the **outcome would have been different**; consequently, no evidentiary hearing is necessary."

*Andrew*, 164 P.3d at 199 (Emphasis added)   Clearly, the "clear and convincing evidence" standard refers to the standard for granting an evidentiary, but unquestionably does not refer to any *Strickland* standard.

An evidentiary hearing is necessary to resolve this claim.   See also Petitioner's  Reply to Ground XVIII and her reply to Ground XVIII.

**Failure to Call Defense Witnesses**.

Petitioner claimed that defense counsel failed to present evidence from lay witnesses which corroborates her version of the homicide.  Doc. 26 at 174.   Respondent claims that the OCCA rejected this claim on the merits.  Doc, 42 at 114.

23

Again, the OCCA determined:

> "This evidence does not show by *clear and convincing evidence* that the
> *outcome would have been different*; consequently, no evidentiary hearing is
> necessary.

*Andrew v. State*, 164 P.3d at 199.  (Emphasis added)    The *Strickland* standard was not

applied and, therefore, there was not adjudication on the merits in regards to this claim.

Again, an evidentiary hearing is necessary to resolve this claim.    See also Petitioner's  Reply

to Ground XVIII and her reply to Ground XVIII.

**Failure to Present Defense Handwriting Expert**.

The State presented State's Ext 24, a Prudential insurance form allegedly used by James

Pavatt and Petitioner to cause Prudential to change ownership of the insurance policy to

Petitioner.  The State presented evidence that Petitioner forged Robert Andrew's signature on

the document.   The State's handwriting expert testified that Mr. Andrew's signature was a

practiced freehand simulation of a signature he had used earlier in life, and presented evidence

that Petitioner admitted that she could sign Robert Andrew's name better than he could.

Petitioner claimed that an examination of other available, but unused, evidence shows

that the State's handwriting examiner's conclusions were incorrect.  Attached to Petitioner's

request for evidentiary hearing in state court were non-record materials which Petitioner claims

show that the signatures were actually "cut and paste" signatures.   This shows that it was

unnecessary for a forger to possess any familiarity with the signature of Robert Andrew.    In

regards to this claim the OCCA held that "[n]o clear and convincing evidence exists for the

24

holding of an evidentiary hearing." Petitioner claims that this a determination of whether to hold an evidentiary hearing, but there was no determination of the claim of ineffective assistance.

Again, the Petitioner incorporates Ground XVIII and her reply to Ground XVIII..

**Failure to Surrender to the Mexican Authorities.**

During post conviction proceedings the Petitioner filed an Application For Evidentiary Hearing on claims of ineffective assistance of counsel, including her claim that counsel was ineffective for failing to inform her of the need to surrender in Mexico. See Ground VI, Part B(II). Petitioner claimed that the OCCA failed to review the "deficient performance" prong of *Strickland*. The OCCA's held:

> "Andrew has neither made a compelling argument nor provided sufficient evidence that she would have escaped the death penalty had her attorney advised her to turn herself in to the Mexican authorities. Therefore, regardless of counsel's knowledge of the treaty, Andrew cannot show that she was prejudiced by counsel's conduct."

See Attachment 1 to Appendix (unpublished opinion denying post conviction relief).

Respondent claims that the OCCA adjudicated the claim on the merits. Doc. 42 at 123. However, the OCCA made no mention of the non-record materials attached to the Motion For Evidentiary Hearing. "If a state court fails to consider the very evidence that the claim is based upon, then the State court has not adjudicated the merits of the claim." *Wilson v. Workman,* 577 F.3d at 1291. No deference is warranted due to the OCCA's failure to adjudicate this claim on the merits. Petitioner is entitled to an evidentiary hearing on this

claim.

Petitioner incorporates Ground XVIII and reply to Ground XVIII.

**GROUND VII.        ADMISSION OF IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE VIOLATED PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH, EIGHTH  AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

Petitioner claims  that the admission of irrelevant but highly prejudicial evidence violated her due process rights under the Fifth, Eight, and Fourteenth Amendments of the United States Constitution and Article II, §§7 and 9 of the Oklahoma Constitution. She included the following claims:

1.  Evidence of suspicion which distracted and confused the jury was erroneously admitted, including documents showing that in the months prior to the homicide James Pavatt made Petitioner a primary beneficiary in two life insurance policies on his life.  This evidence was purported to be relevant to further establish the relationship between Pavatt and Petitioner, and to show that Petitioner could manipulate men.    Petitioner claimed this evidence was irrelevant, or was more prejudicial than probative.  Other evidence consisted of State's Exhibit 285A which was a tape recording of telephone conversations between Petitioner and Robert Andrew.    Included in the tape were two conversations between Robert Andrew and Petitioner's minor daughter who was asking him  to come to by to see her new dog.  The State's theory was that Petitioner was enticing Robert Andrew to come by the house so that she could kill him.

Also admitted were two mystery books entitled *Murder is Easy* and *Sparkling Cyanide*,

26

and handwritten book reports regarding the books. This evidence was used to argue that Petitioner was a bad mother.

A Kansas title and registration for a 1997 dodge SD registered to Jennifer Rose Bowlin and Kimberly Bowlin, Petitioner's sister. This was admitted to show that Petitioner and James Pavatt had been planning on switching cars with the Bowlins so they could flee and avoid arrest.

2.    Cumulative evidence of the relationship between Petitioner and James Pavatt was admitted. Substantial evidence was admitted in regards to this relationship, including luggage that included Petitioner's thong underwear.

3.    Additional evidence was admitted which served to arouse sympathy for Robert Andrew, including a letter from him to Ronald Stump stating how much pain Robert Andrew was going through, his expression of gratitude for Mr. Stump's prayers and counseling, and his expression of love for Mr. Stump and his family.  Other evidence consisted of tape recordings of conversations between Petitioner and Robert Andrew which cast Mr. Andrew in a sympathetic light.

Respondent claims that "no clearly-established Supreme Court precedent exists to support what amounts to garden-variety state law evidentiary challenges by Petitioner." Doc. 42 at 144.   The admission of the evidence "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997). *See also Lisenba v. California*, 314 U.S. 219,

27

236 (1941).    The Supreme Court held that the Eighth and Fourteenth Amendments demand a higher degree of reliability and scrutiny in capital cases.   *Woodson v. North Carolina*, 428 U.S. 280 (1976).   The Tenth Circuit  has also held that "[w]hen, as here, habeas petitioners challenge the admission of photographic evidence as violative of the Constitution, this court considers 'whether the admission of evidence . . . so infected the sentencing proceeding with unfairness as to render a jury's imposition of the death penalty a denial of due process.'" *Spears v. Mullin,* 343 F.3d 1215, 1226 (10th Cir. 2003), *citing Romano v. Oklahoma*, 512 U.S. 1, 12 (1994).   In regards to a due process claim regarding the admission of photographs in state court, the Tenth Circuit also explained that the Court will:

> "[R]eview the OCCA's determination of this claim to determine whether its decision is a reasonable application of federal due process principles.  In this context, this Court has held that federal due process 'will be satisfied only if the probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission.'"

*Lamb v. Oklahoma County District Court*, 229 Fed. Appx. 690, 694 (10th Cir. 2007).

Clearly, the admission of the evidence about which Petitioner complains denied her a fundamentally fair trial.    Habeas relief is warranted on this claim.

**GROUND   X.   THE OCCA UNREASONABLY REJECTED PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN FAILING TO CHANGE VENUE AND  DENIED PETITIONER HER  RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION BY OVERRULING PETITIONER'S NUMEROUS MOTIONS FOR CHANGE OF VENUE AND FORCING HER TO BE TRIED IN A IN A COMMUNITY PERVADED BY  PREJUDICIAL PRETRIAL PUBLICITY**.

A.    Counsel for Respondent concurs that this claim is exhausted for purposes of federal habeas and may be reviewed on the merits.   Respondent  notes that Petitioner raised

28

this claim on direct appeal and that trial counsel for Petitioner filed a Motion for Change of Venue based upon pervasive, prejudicial pretrial publicity. (O.R. 771-78); Respondent's Response, Doc. 42, at 172. Counsel for Respondent contends OCCA understood the federal nature of the claim advanced and that a habeas petitioner attempting to show a due process violation because of a state trial judge's failure to grant a change of venue motion must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice. Additionally, Respondent adds that the Petitioner must show that it involved such a probability that prejudice will result that it is deemed inherently lacking in due process. Doc. 42, at 174.

This burden was met by Petitioner in her Petition and Petitioner will further address constitutional error which occurred in this case where Petitioner was convicted and given the death penalty when the jury selection violated Petitioner's due process rights. *Irvin v. Dowd*, 366 U.S. 717 (1961).

B.     Respondent on the merits first addresses presumed prejudice. Doc. 42, at 175. Respondent references some evidence introduced at the hearing on the Motion for Change of Venue and concedes in recognizing the large amount of media coverage in this case. Respondent references the standards governing change of venue derived from the due process guarantees of the Fourteenth Amendment. Doc. 42, at 176. Respondent cites language of the 10th Circuit in *Hale v. Gibson*, 227 F.3d. 1298 (10th Cir. 2000) noting that trial courts's resolution of such as this claim should have special deference. Respondent further argues that

in order to demonstrate   prejudice should be presumed, the defendant must establish an irrepressibly hostile attitude pervaded the community" citing  *Hale*, 227 F.3d at 1332.

Counsel notes that this line of cases include decisions previously cited in the Petition from the U. S.  Supreme Court wherein the law is clear that an accused must be tried by " a public tribunal free from prejudice, passion, excitement, and tryannical power. *Chambers v. Florida*, 309 U.S. 227, 236-237 (1940).   The    Sixth Amendment to the United States Constitution guarantees the right to an impartial jury, which includes the right to a trial by a jury free from pervasive and prejudicial media coverage which prevents a fair trial to which a criminal defendant is entitled.  *Sheppard v. Maxwell*, 384 U.S. 333, 342-63 (1966).  The constitutional standard of fairness requires that a defendant have a "panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. at 722.  Due process requires a change of venue where a trial judge may be unable to seat a fair and impartial jury due to prejudicial pretrial publicity or an inflamed community atmosphere.  *Rideau v. Louisiana*, 373 U.S. 723, 726, (1961).

The refusal to grant a motion for change of venue may constitute a violation of due process. *Groppi v.  Wisconsin*, 400 U.S. 505 (1971).  Prejudice may be presumed when it is shown that "the influence of the news media, either in the community at large or in the courtroom itself, saturated or pervaded the proceedings.  *Murphy v. Florida*, 421 U. S. 794, 798-799. (1975).    "Every procedure which would offer a possible temptation to the average man. . . to forget the burden of proof required to convict the defendant, or which might lead

30

him to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

Respondent argues that Petitioner has not shown any particular article in the media or that an article in the media was not an factual account or that same was somehow invidious or inflammatory in nature. Respondent argues that it is not surprising that the record does not reflect an **irrepressibly hostile attitude** pervaded the community or that the influence of the news media pervaded the proceeding as in few cases cited above. Respondent in part concludes that it is not surprising as Petitioner's case was not tried in a small rural community but rather in a largely urban county of approximately 660,000 people. Doc. 42 at 179.

This is simply a fatally flawed analysis of the voir dire in this case. The evidence and exhibits introduced at the hearing on the motion to change venue and the record of the voir dire examination do not support Respondent's analysis. As was set forth in Petitioner's Petition there is substantial evidence of prejudicial pretrial publicity that was presented at the hearing on the venue change that was conducted prior to any trial and prior to the trial of the co-defendant James Pavatt and his conviction and imposition of the death penalty by Mr. Pavatt's jury. The voir dire in this case clearly establishes the pervasive prejudicial publicity in this case as summarized in Attachment 22A to the Petition in this case. Appendix to Petition for Writ of Habeas Corpus.

An objective analysis of the effects of the pre-trial publicity claim herein, which is easily overlooked, is that **Petitioner was tried after the Pavatt's trial. The publicity of**

31

**Pavatt's trial only elevated and enhanced the prejudicial publicity of this case creating a hurdle which could not be cleared by Petitioner to have a constitutionally fair trial. This resulted in a denial of due process. Any reasonable possibility of having a fair and impartial jury for Petitioner was eliminated by the conviction and death sentence of Pavatt as this fact was certainly known to the prospective jurors and the jurors who actually sat on Petitioner's case as shown by the record..** See Appendix, Attachment 22A.

An illustrative jury colloquy regarding the effect of Mr. Pavatt's trial and sentence of death is that of prospective juror Wolfe. See Appendix, Attachment 22 A.3. In this examination of the prospective juror, Wolfe thought it would be hard to be impartial with what he knew about the case and that Petitioner was in cahoots with Mr. Pavatt and it looked pretty incriminating on her part. See Appendix, Attachment 22A, pg. 5. The number of times that counsel moved for a change of venue during the voir dire examination illustrates the climate of the pervasive prejudicial publicity. See Appendix, Attachment 22B. The record of the voir dire indicates that the trial court had never conducted voir dire in the manner of individual examination of prospective jurors in camera as was done in this case . The trial judge in part recognized the problems and impact of the publicity when she noted **" part of our problem......they watch tv and court tv...My God we're in trouble.... he completely lost me in half the things he said ..."** See Appendix, Attachment 22B, pg. 2 and voir dire transcript, Vol. II, pg. 134, ln. 2-4. (emphasis added) This statement speaks for itself.

This is not what the U.S. Constitution guarantees each person charged with a crime,

but  when the issue is life or death  this constitutional guarantee must be held  inviolate.

Yes, the Respondent notes the few cases of the United States Supreme Court regarding change of venue, but these cases clearly were tried in times where the media was not as pervasive as it clearly is the case  now with increasing technology which is common knowledge in today's society.  The media saturation of this case  is only understood by close scrutiny of the voir dire examination.  See Appendix, Attachment 22A and B and transcripts of the voir dire examination.

The only reasonable conclusion considering the totality of the circumstances in this case is that the extensive pretrial publicity rises to the level, especially considering the impact of the Pavatt trial, conviction, and death sentence, that prejudice must be presumed entitling Petitioner to habeas relief.  *Hale v Gibson*, 227 F.3d 1298.

Counsel for Respondent adds that there was no claim by Petitioner that any particular juror who sat on the jury should have been struck for cause ... review of voir dire in this case does not support a finding Petitioner was actually prejudiced from the pre-trial publicity. Doc. 42, at 183.   This ignores the fact that prospective juror Riggs  (VD Tr., p. 252 ),  who ultimately sat on the jury, stated he had heard the publicity of the case, that he favored the death penalty, starting crying during the examination and effectively acknowledged he leaned toward the death penalty.  This prospective juror should have been excused without any further discussion.  This is simply an example of the arbitrariness of the death penalty.

The additional classic example of constitutional error in this jury selection is the

examination of Richards of the jury pool who was left on the jury. (VD Tr., p. 285)  He had heard about the case, formed an opinion, media coverage was damning (VD. Tr, p. 303), knew of the coverage of the fleeing (VD Tr., p. 303), and  didn't know someone would want someone on the jury so ill informed. (VD Tr., p. 305)   A cause request by the defense was denied.  (VD Tr., p. 316)

These are people who sat on the jury that imposed the death penalty.  This is not the fair and impartial jury guaranteed by the Constitution and the cases noted herein and in the opening brief.

The OCCA decision in this case was contrary to and was an unreasonable application of Supreme Court precedent and the court failed to recognize the due process violation herein regarding the voir dire and seating of the jury and Petitioner was irreparably prejudiced thereby.

Here, the proper pre-trial standard clearly dictated a change of venue, but the trial judge made it quite clear that she would not adhere to this standard, instead applying her own standard which could not possibly be met except during the voir dire process, where prospective jurors get to decide whether they think they can give the defendant a fair trial. (1/21/2003 M.Tr. 106, 108)

This standard violates 22 O.S.2001, § 561, providing for a change of venue "before the trial is begun," as well as the fundamental principle that mere assurances of individual jurors they can be fair and impartial are not dispositive.  *Murphy v. Florida*, 421 U.S.  794, 798-

800(1975); *United States v. McVeigh*, 918 F.Supp. 1467, 1472 (W.D. Okla. 1996) (noting

existence of prejudice "may go unrecognized in those who are affected by it").

There can be no doubt that the influence of the media in this case was overwhelming,

and Petitioner submits that this is a classic case in which prejudice should be presumed. *Muphy*

*v. Florida, supra.* Under these facts and circumstances, it was an abuse of discretion and a

denial of Petitioner's fundamental constitutional rights to overrule her motion for change of

venue filed and which was renewed before the trial court during voir dire numerous times .

Greater scrutiny should be given to such a claim of pretrial publicity especially when

the co-defendant has been tried, convicted and given the death penalty prior to Petitioner's

trial. Such a sequence only exacerbated the heightened public awareness of the community

regarding the pervasive, and prejudicial pretrial publicity. Here, based upon the totality of the

circumstances regarding the documented publicity of both trials, Pavatt's and Petitioner's, and

the prospective juror responses in voir dire, prejudice should be presumed and relief granted

to Petitioner.

Petitioner's convictions and sentence must therefore be reversed. Here the state court

ruling is an unreasonable application of clearly established federal law in that record of Motion

for Change of Venue and voir dire examination together reveals the kind of wave of public

passion that would have made a fair trial almost impossible by the jury empaneled as a whole.

This error in this case is violative of clearly established law for which relief should be granted.

*Murphy*, supra.

35

**GROUND XIII. THE OCCA'S REJECTION OF PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIMS WAS UNREASONABLE AND SHOULD NOT BE GIVEN DEFERENCE BY THIS COURT AS THE MISCONDUCT VIOLATED PETITIONER'S RIGHTS GUARANTEED BY THE EIGHT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

A.  Counsel for Respondent admits this claim is exhausted for purposes of review. Response of Respondent, Doc. 42 at 172.   Counsel for Respondent references  that OCCA reviewed these claims and held that the Petitioner failed to show either that her trial was so infected by prosecutorial misconduct as to violate due process or that her death sentence was improperly or unconstitutionally obtained.   Response of Respondent, Doc. 42 at 173-73.

B.     The prosecutorial misconduct in this case was simply a continuation and second act of the play first commenced in the trial of co-defendant James Pavatt.   Exhibit 1 attached hereto, the Reply to Response to Writ of Habeas Corpus, Proposition VII at pages 50-74, in *James Dwight Pavatt v. Randall G. Workman*, Dkt. 42 in Case No. CIV-08-470-R,  shows the commonality of the prosecutorial misconduct in the trials of the co-defendants, James Pavatt and Petitioner Andrew which is material in this case.    This prejudicial prosecutorial misconduct was  only heightened in its effect in this case by the prejudicial pretrial publicity as stated in Proposition X herein which included the extensive publicity and coverage of the trial of Mr. Pavatt.

Respondent essentially urged in *Pavatt* that there was nothing improper or inconsistent with the manner in which the prosecution used the "confession letter" in the separate trials of Mr.  Pavatt and Petitioner Andrew.  Respondent reaches that conclusion,  but the record does not support such a conclusion.  In Mr.  Pavatt's trial, the State refers to the letter as "direct evidence," a "confession" to the crime, and calls an expert to testify that the letter was written

in Mr. Pavatt's handwriting. The prosecutors repeatedly refer to the letter in closing argument and claim it shows that Mr. Pavatt admitted shooting Brenda Andrew and admitted his reasons for wanting Rob Andrew dead. (Exhibit 1 attached hereto, James Pavatt's Reply to Response to Petition for Writ of Habeas Corpus, pg 61-62, citing Mr. Pavatt's trial transcripts, Tr.Vol. 14B at 3576, 3857, 3595, 3599.)

At Petitioner's trial, the prosecution conversely claimed "...there is no truth" to what the letter says; it is "concocted. (Tr. Vol. 17 at 4105). When challenged, the inconsistency in the State's presentation of the letter at Mr. Pavatt's trial, the assistant district attorney stated that the "State of Oklahoma has never, ever believed that letter was anything but just what Ms. Smith told you, a concoction." (Tr. Vol. 17 at 4105).

If, in fact, the State of Oklahoma has never, ever believed that the letter was anything but a concoction, then when they presented it in a completely different light during Mr. Pavatt's trial, they were in effect presenting testimony and evidence that they believed to be false. See *Napue v. Illinois*, 360 U.S. 264(1959). The presentation of false evidence should evidence prosecutorial misconduct from which a presumption of prejudice should arise under due process standards and should be considered in the prosecutorial misconduct claim of Petitioner herein.

**C.**    As previously stated to this Court so often Oklahoma County prosecutors have long violated restrictions placed upon permissible argument in criminal prosecutions, despite repeated warnings by the OCCA that excesses in closing arguments will not be tolerated. *McCarty v. State*, 765 P.2d 1215 (Ok. Cr.1988); *Bechtel v. State*, 738 P.2d 559 (Ok. Cr.1987).

As previously stated in the Petition, which is not rebutted by the Response of the

37

Respondent, the prosecutor's prejudicial conduct is best illustrated in reference to Tricity's testimony on the stand.  The issue of Tricity testifying was litigated out of hearing of the jury with Tricity's psychologist recommending that she not testify and defense counsel stating that he had to ask Tricity if she wanted her mother to get the death penalty. (Tr. 4356-57, 4360) In response to defense counsel's statement, the court asked "Are you actually going to ask her that .... Are you going to put that question to that 13-year-old." (Tr. 4360) Counsel responded that "her mother's life is on the line here."  The court allowed counsel to ask the question even though "this is going to devastate this kid." (Tr. 4361)

When defense counsel called Tricity to the stand she was crying and had difficulty testifying. (Tr. 4363-64) Counsel only asked her to identify several letters she wrote Petitioner and then released her because he didn't "want to put her through any more of this."  (Tr. 4365) In closing, the prosecutor told the jury "I'm sure you noticed from the witness stand, Tricity didn't beg for her mother's life." (Tr. 4478) After taking advantage of counsel's predicament with Tricity, the prosecutor perversely attacked counsel's decision to call Petitioner's 15-year-old girl niece, who tearfully asked the jury spare Brenda's life.  The prosecutor asked the jury, "Would you put your 15 -year-old niece on the stand to do that?  I wouldn't".  (Tr. 4485)

This is after the Pavatt conviction and the mission of the prosecutor was going to be accomplished sparing no decency, much less fundamental due process.

Although some of the improper prosecutorial tactics discussed herein were met with contemporaneous objections by defense counsel, none of the above instances of misconduct constitute a fair comment on the evidence.  Lack of an objection does not preclude the Court from reviewing improper comments. *See, e.g., Atterberry v. State,* 731 P.2d 420, 423 (Okl.Cr.

38

1986).  When a defendant is deprived of a fair trial because of the prosecutor's misconduct, due process is violated and reversal is warranted.  *See United States v. Gabaldon,* 91 F.3d 91, 93 (10th Cir. 1996)(citing *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3108-09, 97 L.Ed.2d 618 (1987).

The Prosecutor continued misconduct in second stage of trial by urging the jurors to disregard mitigating evidence, which contributed to the imposition of the death sentence.  The Supreme Court has held a defendant in a capital case has a constitutional right to consideration of mitigating factors by the jury, and that the jury cannot be precluded from considering mitigating evidence*. Eddings v. Oklahoma*, 455 U.S. 104 (1982);  *Hitchcock v. Dugger*, 481 U.S. 393  (1987); *Skipper v. South Carolina*, 476 U.S. 1  (1986); *Caldwell v. Mississippi*, 472 U.S. 320  (1985).

Petitioner was denied her constitutional right to a fair trial by the repeated abuses of the prosecutor.  Her convictions and sentences must be reversed due to the fundamental unfairness and partiality  under the state and federal constitutions, U.S. Const. amends. V, XIV; Okla. Const. art. 2, § 20.

### GROUND XVIII.  PETITIONER SHOULD HAVE BEEN GRANTED AN EVIDENTIARY HEARING IN STATE COURT, AND SHE SHOULD BE GRANTED AN EVIDENTIARY HEARING IN THIS COURT.

Petitioner was denied an evidentiary hearing on appeal and during post conviction proceedings.   Respondent, however, claims that Petitioner is not entitled to a hearing in this court.  Doc. 42 at 234.

In summary,  Petitioner's main argument - that her claims of ineffective assistance of counsel were not adjudicated on the merits in state court and that, therefore, she is entitled to

an evidentiary hearing in this court - is that the state court did not apply the *Strickland* standard to the evidence submitted with her requests for evidentiary hearings. *See Wilson v. Workman*, 577 F.3d 1284, 1292 (10th Cir. 2009) *en banc*. In *Wilson* the Court differentiated between cases in which the state court adjudicated ineffective assistance claims on the merits and those cases which had not been so adjudicated, stating:

> "The reason they constitute decisions on the merits is that the OCCA in these cases applies the *Strickland* standard to the evidence, without regard to the additional "clear and convincing evidence" hurdle of Rule 3.11(B)(3)(b)."

*Id.*

### 1.    Failure to investigate and presenting evidence tending to show her innocence.

Petitioner presented claims of ineffective assistance of counsel in state court in regards to the failure to present such evidence, discussed below. She also filed an Application For Evidentiary Hearing on these claims of ineffective assistance of counsel pursuant to Okla. Stat. tit. 22, ch. 18 App. Rule 3.11(B)(3)(b), and pursuant to the requirements of Rule 3.11 she attached to the application non-record materials in support of her claims. Therefore, she "diligently sought to develop the factual basis underlying [her] habeas petition, but a state court prevented [her] from doing so." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). Also, her allegations are true and not contravened by the existing record, and show that she is entitled to habeas relief. *Id.* at 1253

**The decisions of the OCCA on these claims are not entitled to deference because the Rule 3.11 claims brought by Petitioner were not adjudicated on the merits.**

Petitioner submits that the OCCA did not adjudicate on the merits her claims of

40

ineffective assistance of counsel and, therefore, no deference is afforded the decision of the OCCA.   The language of the OCCA's opinion shows that the OCCA did not use the proper standard for determining whether to grant an evidentiary hearing.   Further, it is clear that the OCCA did not use the proper standard for adjudicating claims of ineffective assistance of counsel.

### 2.    Failure to present blood splatter evidence.

The language in the OCCA opinion stated:

> "This evidence does not show by **clear and convincing evidence** that the **outcome would have been different**; consequently, no evidentiary hearing is necessary."

*Andrew*, 164 P.3d at 199, ¶ 103.  (Emphasis added)

In regards to all the Rule 3.11 claims, the OCCA also held:

> "Appellant's application for evidentiary hearing shall be denied.  She has not presented **clear and convincing proof** to this Court **that counsel was ineffective** for failing to present this evidence, thus entitling her to an evidentiary hearing on this extra-record evidence and to have the record supplemented with the evidence."

Id. at 199, ¶ 111.  (Emphasis added)

However, the correct applicable standards for determining under Rule 3.11 whether an evidentiary hearing is warranted are as follows:

### 1. Evidentiary Hearing

**1(a)**.   Standard for an evidentiary hearing pursuant to Rule 3.11:   To obtain an evidentiary hearing in State Court pursuant to Rule 3.11 a defendant must attach to her Application For Evidentiary Hearing sufficient non-record materials which show by "clear and

convincing evidence" that there is a "strong possibility[4] trial counsel was ineffective for failing

to utilize or identify the complained of evidence." Rule 3.11(B)(3)(b); *Dewberry v. State*, 954

P.2d 774, 775 (Okla. Cr. App. 1998). Here, however, instead of the standard set out in the Rule,

the OCCA applied a high standard of "**clear and convincing evidence**" that the **outcome**

**would have been different.** Pursuant to the Rule, Petitioner needed only to show by **clear and**

**convincing evidence** a "strong **possibility**" that trial counsel was ineffective for failing to use

the non-record materials  in order to be granted an evidentiary hearing.   Such a showing of

clear and convincing evidence that there was a "strong possibility" that trial counsel was

ineffective due to his actions, would allow  Petitioner a hearing in which she could **then** meet

the two prongs of *Strickland*.   But, she need not meet the standard of *Strickland,* i,e., that there

was a **reasonable probability** that the outcome would have been different, in order to receive

an evidentiary hearing.  Rather, she only needed to show clear and convincing evidence of a

strong **possibility** that her counsel was ineffective.  By heightening the standard for obtaining

an evidentiary hearing in Petitioner's case, Petitioner did not receive what the state statute

provided her.  *Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980).

**1(b).**  Federal Standard For Receiving an Evidentiary Hearing

Besides, the federal standard for obtaining an evidentiary hearing does not impose

---

[4]Even though to obtain an evidentiary hearing under the Rule, a Petitioner must only show a "strong possibility" counsel was ineffective, rather that the "reasonable probability" requirement to show prejudice in *Strickland*, the showing of this "strong possibility" must be made by "clear and convincing evidence", a much higher hurdle than *Strickland* requires. *Wilson v. Workman,* 577 F.3d 1284,1294, 1297 (10th Cir. 2009).

Oklahoma's "clear and convincing evidence" requirement.  *Wilson v. Sirmons*, 536 F.3d 1064, 1081 (10th Cir. 2008)[5].  "To receive an evidentiary hearing on a *Strickland* claim, a petitioner need show only that 'the allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.[6]'"  *Wilson*, at 1081, citing *Miller v. Champion*, 161 F.3d at 1249.  Therefore, the OCCA did not decide the federal claim that an evidentiary hearing is warranted,  and this Court reviews the claims *de novo*.

The Tenth Circuit explained that the Oklahoma standard is higher than the federal standard in *Wilson v. Workman*:

> "To verify that the Oklahoma standard is more difficult to satisfy, one need only look to empirical evidence where the state and federal courts have resolved identical requests for an evidentiary hearing. *See Bryan v. Mullin*, 335 F.3d 1207, 1215; *Mayes v. Gibson*, 210 F.3d 1284, 1289 (10th Cir. 2000); *Miller,* 161 F.3d at 1253-54, 1259; *see also (Kevin) Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007).  In each of these cases, the OCCA denied a request for an evidentiary hearing.  When the federal court heard the identical request under the federal standard, the federal court granted a hearing.  The Rule 3.11 standard is contrary to the federal one."

*Wilson v. Workman*, 577 F.3d at 1298.  The Court also said that due to the Rule's higher evidentiary burden "we cannot say that the OCCA's failure to grant an evidentiary hearing under this standard necessarily constitutes a determination that the defendant could not satisfy the federal standard."  *Id.* at 1299.

---

[5] The federal standard certainly does not impose the standard used in the *Andrew* opinion, which is not even consistent with the Rule 3.11 standard which the OCCA should have used if it were to its rule set out in Oklahoma statutes.

[6] Of course, as referenced above, she would have to also show that she diligently sought to develop the claims in State Court but was prevented from doing so.   She did so by requesting an evidentiary hearing and attaching non-record proof as required by Rule 3.11.

**1(c).**      Rule 3.11 itself tells that the State Court in deciding whether to grant an evidentiary hearing is not adjudicating  the merits of substantive claim because the materials submitted with the Application for Evidentiary Hearing clearly, pursuant to the Rule, are not a part of the record and only if an evidentiary hearing is granted and remanded to the trial court will those materials become a part of the record.   The OCCA specifically made it clear that an actual determination on the merits of the substantive ineffectiveness claim is made **only if** an evidentiary hearing is granted in *Hancock v. State*, 155 P.3d 796 (Okla. Cr. 2007) where the Court stated that if the Petitioner passes the test of setting forth "sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence,"

> we will "remand the matter to the trial court for an evidentiary hearing, utilizing the adversarial process, and direct the trial court to make findings of fact and conclusions of law solely on the issues and evidence raised in the application." [citation omitted] The evidentiary record thus created in the District Court may then be admitted as part of the record on appeal and *considered in connection with Appellant's claims of ineffective counsel.*

*Id*. at 822.  (Emphasis added)   It could not be made more clear - the non-record materials are not considered in connection with the ineffective assistance claim unless there is an evidentiary hearing.  Therefore, there can be no adjudication on the merits of the ineffectiveness claim.  This is even more clear in Rule 9.7 for obtaining an evidentiary hearing during post conviction proceedings because the language contained  in the  rule for post conviction is more explicit, but has the same result as Rule 3.11.  Petitioner's claims on post-conviction set out below involve Rule 7.9.

44

The standard used by the OCCA not only was wrong for determining whether to grant an evidentiary hearing in Petitioner's case, it was also not the proper standard for determining ineffective assistance of counsel.

Although in *Wilson v. Workman*, 577 F.3d 1284, 1292 (10th Cir. 2009) the Tenth Circuit in analyzing Rule 3.11 stated "this does not mean that the state court fails to reach the merits in every case in which it denies the defendant's motion for an evidentiary hearing under Rule 3.11(B)(3)(b)", the OCCA's opinion in *Hancock* clearly indicates that only if there is an evidentiary hearing will the non-record materials be "*considered in connection with Appellant's claims of ineffective counsel*" and, therefore, reach the merits of the claim.

## 2. Ineffective Assistance of Counsel

**2(a)**.    Standard to show ineffective assistance of counsel.    Aside from the explicit acknowledgment in *Hancock* that non-records are not considered in connection with the claim of ineffective assistance until an evidentiary hearing is had, it is further clear from the language of the OCCA in Petitioner's case that it was not adjudicating the substantive claim on the merits, but merely determining whether an evidentiary hearing should be granted. This is so because the language described both in Rule 3.11 and in the OCCA's opinion is found nowhere in the clearly established and well-known *Strickland* opinion. "To establish ineffective assistance of counsel, a petitioner must prove that counsel's deficient performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial and a reliable result." *Boyd v. Ward*, 179 F.3d 904, 913 (10th Cir. 1999) (citing *Strickland*, 466 U.S. 687). Under *Strickland*, a defendant must show,

by no special burden of proof, that counsel rendered deficient performance, and in regards to the prejudice prong a defendant must show that there is a reasonable probability that, but for the errors the results would have been different. *Strickland v. Washington*, 466 U.S. at 688.

Even if it could be said, which Petitioner denies, that the OCCA purported to adjudicate the substantive claims on the merits, certainly the "clear and convincing" standard used by the OCCA was contrary to clearly established federal law as determined by the United States Supreme Court, and the state court decision still is not entitled to application of the deference provided in §2254(d).

**2(b)**     Again, should it be determined that the OCCA adjudicated the substantive ineffective assistance claims on the merits, this Court still does not apply §2254 deference in its review of the OCCA decision.   The OCCA discussed the non-record materials and held "*[t]his* evidence does not show by clear and convincing evidence that the outcome would have been different . . ." *Andrew*, 164 P.3d at 199, ¶ 103.  First of all, Strickland does not require a "clear and convincing standard", but also this is the same mistake found in *Wiggins v. Smith* wherein the State Court merely evaluated the non-record evidence and did not include the trial record evidence in its determination of the substantive claim.  The Supreme Court held it is necessary to consider both the non-record materials submitted with the Application For Evidentiary Hearing *and* the trial record in order to determine the effectiveness of counsel. *Wiggins v. Smith,* 539 U.S. 510, 536 (2003) (citing *Williams v. Taylor*, 529 U.S. at 397-398).

Likewise, Rule 9.7 regarding requests for evidentiary hearings in State Court during post conviction proceedings were denied.     The OCCA made no mention of the non-record

46

materials attached to Petitioner's request for an evidentiary hearing on her claim that trial counsel failed to inform her of the need to surrender in Mexico.   As in the Rule 3.11 claims, there was no determination on the merits of this particular claim.      Petitioner is entitled to an evidentiary hearing.

Respectfully submitted,

John M. Stuart, OBA 8709

s/ John M Stuart,_____
STUART, FRIEDA & HAMMOND, P.C.
1111 W. Willow, Suite 100
Duncan, Oklahoma 73533
Telephone: 580-252-9033
Facsimile: 580-252-6251
sfhpc@sfhpc.net
jmssfhpc@sfhpc.net

Mark Henricksen, OBA 4102

s/ Mark Henricksen_____
HENRICKSEN & HENRICKSEN
LAWYERS, INC.
600 North Walker, Suite 220
Oklahoma City, Oklahoma 73102
Telephone: 405-609-1970
Facsimile: 405-609-1973
mark.henricksen@coxinet.net

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2010, I electronically transmitted the attached document to the Clerk of this Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Seth Branham
Assistant Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73102
fhc.docket@oag.state.ok.us


s/ John M Stuart,
JOHN STUART


s/ Mark Henricksen
MARK HENRICKSEN